IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA DUCES TECUM )<br>  Served on the OFFICE OF THE )<br>  COMPTROLLER OF THE CURRENCY )<br> )<br> )<br> )<br> )<br> ) | Civ. No. 05-0525 (ESH/DAR)<br><br>[U.S. District Court, District of Arizona<br>  Case No.:05-1504- pHX-NVW captioned<br>  <u>Janos v. Wells Fargo Bank</u>] |

RESPONDENT OFFICE OF THE COMPTROLLER OF THE CURRENCY'S
MEMORANDUM IN OPPOSITION TO PETITIONER'S MOTION TO COMPEL AND
CROSS-MOTION TO QUASH SUBPOENA

Pursuant to Federal Rules of Civil Procedure, Rules 26(b)(1) and 45 (c)(3), the United States of America, by and through undersigned counsel, on behalf of the United States Office of the Comptroller of the Currency (OCC) files this memorandum in opposition to petitioner, Cynthia Janos' (petitioner) motion to compel filed pursuant to Fed. R. Civ. P. Rules 30 and 45, and respectfully moves this Court to quash the subpoena *duces tecum* served on OCC, a non-party in the underlying litigation pending in the District of Arizona.  Motion to Compel, Tab 4.

As explained below, petitioner submitted an administrative request to the OCC under OCC's *Touhy* regulations for privileged documents for use in litigation to which the OCC is not a party.  In the request, petitioner did *not* seek testimony.  The OCC denied petitioner's request for privileged documents, explaining that petitioner had failed to make a sufficient showing on factors required in the agency's *Touhy* regulation, but offering to furnish publicly available documents relevant to the subject matter of the underlying litigation.  The OCC's decision did not address testimony by OCC employees because, as noted, petitioner had not requested testimony.

The subpoena *duces tecum* served on the OCC is invalid because the OCC is not a person under Fed. R. Civ. P. 45, and the OCC's regulations provide the only mechanism for seeking the testimony of OCC employees in litigation to which the OCC is not a party.  Further, the OCC's decision denying plaintiff's administrative request for documents was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

**I.  Procedural Background**

On July 19, 2005, petitioner submitted an administrative request to the OCC for documents related to Wells Fargo Bank's Direct Deposit Advance program.  Motion to Compel, Tab 2.  The request sought "letters, memoranda and other papers . . . that have been generated or collected by the OCC pursuant to its enforcement authority" under the Truth in Lending Act and other specified statutes.  The request went on to explain that "These materials will show OCC's consideration of the lawfulness of the program and whether it condones it or is critical of it."

On August 26, 2005, the OCC issued a decision denying petitioner's request for privileged documents for failure to comply with agency regulations.  Motion to Compel, Tab 3.  Initially, the OCC decision explained that, contrary to petitioner's impression, documents generated in the examination of a national bank are both confidential (*i.e.*, expressly exempt from the mandatory disclosure provisions of the Freedom of Information Act) and privileged under the bank examination privilege.  According to the decision, the OCC is willing to waive the privilege upon a satisfactory showing on factors listed in the OCC's *Touhy* regulation, 12 C.F.R. 4.33(a)(3)(iii).  The decision went on to explain that petitioner had failed adequately to explain how the information is relevant to the purpose for which it was sought, nor did petitioner discuss whether other evidence suited to its needs is available from any other source or whether

petitioner's need for the information outweighs the public interest considerations in maintaining its confidentiality. Finally, the OCC decision, while denying the request for privileged documents, advised that the OCC would furnish petitioner with publicly available documents on payday lending, which is the subject matter of the underlying litigation.

On September 8, 2005, petitioner issued a subpoena that requested not only the documents previously sought, but also a "qualified" OCC employee familiar with the Truth in Lending Act and agency regulations for deposition testimony. Motion to Compel, Tab 4. In response, the OCC, on September 16, 2005, objected to the subpoena and informed petitioner that the subpoena did not comply with the agency regulations, that petitioner had failed to request testimony in his earlier request of the agency, that the material sought was likely privileged, and that the appropriate challenge to the agency's denial of the request for documents is a lawsuit under the APA, 5 U.S.C. § 706(a)(2). Motion to Compel, Tab 5. Petitioner's Motion to Compel then followed.

## II. The OCC Touhy Regulations

The OCC is a bureau within the Department of Treasury headed by the Comptroller of the Currency and charged with broad responsibility for the chartering, supervision and regulation of almost every aspect of the affairs of banks organized under the National Bank Act, 12 U.S.C. § 1 *et seq*. Independent Bankers Ass'n v. Heimann, 613 F.2d 1164, 1168 (D.C. Cir. 1979), *cert. denied*, 449 U.S. 823 (1980); First Nat'l Bank of LaMarque v. Smith, 610 F.2d 1258, 1264 (5th Cir. 1980). Accordingly, OCC is vitally interested in preserving the integrity of the supervisory process --- a uniquely cooperative venture that depends heavily on the willingness of banks to provide sensitive information and bring potential concerns promptly to OCC's attention. It has long been recognized that maintaining the confidentiality of examination reports and supervisory

communications is essential to the success of this process. See, e.g. Bank of America Nat'l Trust & Sav. Ass'n v. Douglas, 105 F.2d 100, 103 (D.C. Cir. 1939) ("by unbroken custom reports of bank examiners have been regarded as privileged"). Moreover, the federal appellate courts have determined that OCC examination reports are privileged under the bank examination privilege. In Re Subpoena Served Upon the Comptroller of the Currency, 967 F.2d 630, 633-634 (D.C. Cir. 1992); In re Bankers Trust Co., 61 F.3d 465, 471-472 (6th Cir. 1995). Congress specifically recognized the sensitivity of these documents by exempting them from the mandatory disclosure provisions of the Freedom of Information Act, 5 U.S.C. § 552(b)(8).

In order to balance a litigant's legitimate needs for confidential supervisory information against the public interest in confidentiality, the OCC has promulgated regulations setting out the means by which private litigants, such as petitioner here, may obtain OCC supervisory materials and testimony. 12 C.F.R. § 4.31 *et seq.*[1] These regulations are based on 5 U.S.C. § 301, the "housekeeping statute" in which Congress authorized an agency to "prescribe regulations for . . . the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." In United States ex rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951), which involved the government's compliance with a subpoena *duces tecum*, the Supreme Court determined that agency regulations restricting disclosure of information in legal proceedings fall within the authority of the housekeeping statute. See In Re Boeh, 25 F.3d 761, 763-764 (9th Cir. 1994); see also Smith v. Cromer, 159 F.3d 875, 878 (4th Cir. 1998). The policy underlying so-called *Touhy* regulations "is to conserve

---

[1] Other federal bank regulatory agencies have promulgated similar regulations. *See, e.g.*, 12 C.F.R. § 309.6 (FDIC); 12 C.F.R. § 261.22 (Board of Governors of the Federal Reserve System); 12 C.F.R. § 510.5 (Office of Thrift Supervision). *See also* 28 C.F.R. §§ 16.21-.29 (Department of Justice); 22 C.F.R. Part 172 (Department of State); 15 C.F.R. Part 15a (Department of Commerce).

governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." Reynolds Metals Co. v. Crowther, 572 F. Supp. 288, 290 (D. Mass.1982). The decision in Marcoux v. Mid-States Livestock, 66 F.R.D. 573, 579 (W.D. Mo. 1975), upheld the OCC's *Touhy* regulations, now 12 C.F.R. § 4.31 *et seq.*, as within the authority of the agency to promulgate, carrying the force and effect of law.

OCC's *Touhy* regulations require that a party seeking non-public documents, such as a bank examination report prepared by OCC examiners, submit a request to the Director of the OCC's Litigation Division in Washington, D.C. 12 C.F.R. § 4.34(a). The request must include information to apprise the OCC of the nature of the litigation, such as a copy of the complaint or other pleading setting forth the assertions in the case, the name of counsel to each party, etc. 12 C.F.R. § 4.33(a)(3)(ii). In addition, the requester is required to make several substantive showings, including showings "that the information is relevant to the purpose for which it is sought;" that "other evidence reasonably suited to the requester's needs is not available from any other source;" and that "the need for the information outweighs the public interest considerations in maintaining the confidentiality of the OCC information and outweighs the burden on the OCC to produce the information." 12 C.F.R. § 4.33(a)(3)(iii)(A)-(C).[2] According to the regulation, the OCC can deny a request for non-public information for reasons that include the requester's failure to show that the information is relevant to the pending matter; other evidence reasonably suited to the requester's needs is available from another source; and production of the evidence would be contrary to the public interest or unduly burdensome to the OCC. 12 C.F.R. § 4.35(a)(2).

---

[2] For testimony, the agency requires, among other things, that the petitioner show "a compelling need." 12 C.F.R. § 4.33 (c).

Under the regulation, the OCC's decision, if rendered by the appropriate official, is a "final agency decision" and "exhausts administrative remedies for discovery of the information." 12 C.F.R. § 4.35(a)(1). Federal court review of the OCC's decision is then appropriate. 12 C.F.R. § 4.37(b)(1)(A)-(B) (specifying that no person in possession of OCC non-public information may disclose it except after the party has exhausted administrative remedies under this regulation and as ordered by a federal court in which the OCC has had the opportunity to appear and oppose discovery).

## III. ARGUMENT

Petitioner's Motion to Compel should be denied and its subpoena quashed as discussed below. The subpoena is invalid and should be quashed because 1) OCC is not a person under Fed. R. Civ. P. 45; 2) OCC's "Touhy" regulations are valid and there has been no waiver of sovereign immunity for this action; 3) the petitioner did not appropriately request certain testimony and 4) petitioner failed to attack OCC's decision to deny his request for documents by challenging the OCC's decision under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, as required by the law in this Circuit.

**A. The Subpoena Should Be Quashed Because Fed. R. Civ. P. 45 Does Not Apply to OCC.**

OCC as part of the U.S. Department of Treasury, an agency in the Executive branch of the Federal government, is not a person as used in Fed. R.Civ.P. 45. See Chen v. Ming Dow Ho, 368 F.Supp.2d 97 (D.D.C. May 6, 2005); Ming Dow Ho v. United States of America, 374 F. Supp. 2d 82, 83-4 (D.D.C. June 13, 2005) *appeal pending*, U.S.C.A. Case No. 05-5319(since Linder[3], this issue has been addressed by several district courts, all of which exempt the federal government from Rule 45); U.S. ex rel Taylor v. Gabelli, 2005 WL 2375173 (D.D.C. May 2,

---

[3] Linder v. Calero-Portocarrero, 251 F.3d. 178, 182 (D.C. Cir. 2001).

6

2005) (RJL); Yousef v. Samantar, WL 1523385 (D.D.C. May 3, 2005)(RBW) *appeal pending*, U.S.C.A. Case No. 05-5197; Lerner v. District of Columbia, 2005 WL 2375175*11-13 (D.D.C. January 7, 2005). (The United States District Court for the District of Columbia lacks jurisdiction to subpoena the federal government because the term "person" in Fed. R. Civ. P. 45 does not include the federal government).

This Circuit's precedent relies on the "longstanding interpretive presumption that "person" does not include the sovereign." Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 781 (2000)(State is not a "person" under the False Claims Act in suit brought by qui tam relater); see also Galvan v. Federal Prison Industries, Inc., 199 F.3d 461, 467 (D.C. Cir. 1999) (same re: federal government). Thus, the Supreme Court has consistently held that as a matter of plain meaning, "the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude [the government]." Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (quoting Wilson v. Omaha Indian Tribe, 442 U.S. 653, 667 (1979), in turn quoting United States v. Cooper Corp., 312 U.S. 600, 604 (1941)); see also United States v. United Mine Workers, .330 U.S. 258, 272 & n. 20 (1947) (citing cases from 1873 in support of "an old and well-established rule"). Therefore, petitioner's subpoena should be quashed.

**B.  OCC's Regulations Provide the Only Mechanism to Respond to Subpoenas.**

As OCC explained to the petitioner's counsel, Letter of September 16, 2005 (Tab 5), no OCC employee may provide testimony concerning information acquired in the course of performing official duties or because of the employee's official relationship with OCC unless authorized by the OCC.  12 C.F.R. § 4.37 (a).  See generally 12 C.F.R. §§ 4.31 *et seq*. (containing OCC's "Touhy" regulations); see also Touhy v. Ragen, 340 U.S. 462 (1951).  Since

the petitioner has never requested testimony, as required by OCC's regulations, 12 C.F.R. § 4.33(c), the petitioner has failed to exhaust her remedies and cannot now seek the aid of the court. Moreover, the OCC's decision denying access to privileged documents sought by petitioner was based on petitioner's inability to make the showings required by the OCC's Touhy regulation, 12 C.F.R. 4.33(a)(3). See Letter of August 26, 2005, Motion to Compel, Tab 3. The validity of federal agency regulations restricting the testimony of federal employees has been upheld by the United States Supreme Court and the District of Columbia courts. Touhy, 340 U.S. at 467-68; Kaplan v. Rose, No. 91-334, 1992 WL 57936, at *1 (D.D.C. March 2, 1992); Houston Business Journal, Inc. v. Office of the Comptroller of the Currency, 86 F.3d 1208, 1212 n.4 (D.C. Cir. 1996). D.C. Courts recognize that employees of an agency with Touhy regulations may not testify in response to non-party subpoenas regarding information acquired as part of their official duties without the specific authorization of the agency. Virtual Defense and Development Int'l, Inc. v. Republic of Moldova, 133 F. Supp. 2d 9, 21 (D.D.C. 2001); Comsat v. Nat'l Sci. Found, 190 F.3d 269, 272 n. 3 (4th Cir. 1999); Alexander, 186 F.R.D. at 69 (D.D.C. 1998). Golden Pacific Bancorp v. FDIC, 1999 WL 1332312, 1999 U.S. Dist. LEXIS 20303 (D.N.J. 1999), which is directly on point in this matter. There, plaintiff issued a subpoena for the deposition of a former OCC bank examiner without first requesting testimony under the OCC's Touhy regulation. The court quashed the subpoena, holding that plaintiff must exhaust his administrative remedies before the OCC before seeking the aid of the federal courts.

OCC has promulgated regulations under authority of the federal housekeeping statute, 5 U.S.C. § 301, to create procedures for responding to subpoenas and requests for testimony. OCC's Touhy regulations generally prohibit testimony of employees in private litigation or litigation to which OCC is not a party. OCC is not a party to the petitioner's underlying lawsuit

because there is no privity of contract or waiver of sovereign immunity. OCC denied Petitioner's request for documents and testimony under its <u>Touhy</u> regulations. Specifically, the <u>Touhy</u> regulations state:

> § 4.33 Requirements for a request of records or testimony.
>
> (a) Generally--
>
> (1) Form of request. A person seeking non-public OCC information must submit a request in writing to the OCC. The requester must explain, in as detailed a description as is necessary under the circumstances, the bases for the request and how the requested non-public OCC information relates to the issues in the lawsuit or matter.

12 C.F.R. § 4.33(a). Additionally, under § 4.33(a)(3) :

> (3) Request arising from adversarial matters. Where the requested information is to be used in connection with an adversarial matter:
>
> (i) The OCC generally will require that the lawsuit or administrative action has been filed before it will consider the request;
>
> * * *
>
> (iii) The request must also:
>
> (A) Show that the information is relevant to the purpose for which it is sought;
>
> (B) Show that other evidence reasonably suited to the requester's needs is not available from any other source;
>
> (C) Show that the need for the information outweighs the public interest considerations in maintaining the confidentiality of the OCC information and outweighs the burden on the OCC to produce the information;
>
> (D) Explain how the issues in the case and the status of the case warrant that the OCC allow disclosure; and
>
> (E) Identify any other issue that may bear on the question of waiver of privilege by the OCC.

<u>See</u> 12 C.F.R. § 4.33. Also, a request for testimony under 12 C.F.R. § 4.33(3) "[m]ust show a compelling need for the requested information." 12 C.F.R. § 4.33(3).

After a request has been received, the OCC regulations further guide consideration of the merits of the request, providing that the OCC's decision is in the sole discretion of

9

theComptroller or his delegate. 12 C.F.R. § 4.35. Further, the basis for denial is outlined in the regulations and include a failure to show relevance to the pending matter, failure to show a compelling need for testimony, that other evidence is available from other sources, and that production would be contrary to the public interest. 12 C.F.R. § 4.35 (a)(2). Finally, there is a specific caveat with regard to testimony: "The OCC generally will not authorize a current OCC employee to provide expert or opinion evidence for a private party." 12 C.F.R. § 4.35 (b). Yet expert testimony about the application of the Truth in Lending Act and OCC regulations to payday lending is precisely what petitioner's subpoena seeks.

The government has a serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations. Exxon Shipping Co. v. United States Dept. of Interior, 34 F.3d 774, 779 (9th Cir. 1994). District courts can balance the government's concerns under the general rules of discovery. Id. at 779. See also Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403, 404 (D.C. Cir.1984); Linder v. Calero-Portocarrero, 251 F.3d. 178, 182 (D.C. Cir. 2001). The Federal Rules of Civil Procedure, Rule 26 (c) and Rule 45(c)(3)(A)(iv), explicitly provide for limitations on discovery, by giving district courts ample discretion to quash or modify subpoenas causing "undue burden". In ruling on discovery requests, Rule 26(b)(2) instructs district courts to consider a number of factors relevant to the government's expressed interests. For example, a court may use Rule 26(b) factors to limit discovery of agency documents or testimony of agency officials if the desired discovery is relatively unimportant when compared to the governmental interests in conserving scarce government resources. E.g., Moore v. Armour Pharmaceutical, 927 F.2d 1194, 1198 (11th Cir. 1991).

In the instant case, the OCC denied the petitioner's request for documents after determining that the request failed to makes the showings required by the OCC's Touhy regulation. Moreover, prior to issuing her subpoena, petitioner never requested testimony, and therefore she has failed to comply with the OCC regulations as described above. Accordingly, for the foregoing reasons, the subpoena should be quashed.[4]

**C. Petitioner Failed to File an Action as Required Under the APA.**

Petitioner's Motion also should be denied because her sole remedy was to file an action under the Administrative Procedure Act, 5 U.S.C.S. §§ 701-706 ("APA"). Under Touhy, federal court litigants may not obtain document or a subpoena *ad testificandum* against an employee of a federal agency that has enacted a Touhy regulation. In that situation, the litigant must proceed under the APA. Lerner v. District of Columbia, 2005 U.S. Dist. LEXIS 10154 (D.D.C. January 7, 2005). "It is the law of this Circuit that, when a federal agency, pursuant to so-called Touhy regulations, prohibits its employees from responding to a subpoena *ad testificandum* without agency approval and declines to grant that approval in a given case, the requesting party must then proceed under the APA, and a federal court will review the agency's decision under an "arbitrary and capricious" standard." Ho v. United States, 374 F. Supp. 2d 82, 83-4 (D.D.C. 2005); Chen v. Ho, 368 F. Supp. 2d 97, 98 (D.D.C. 2005) (Magistrate denied the third party petitioner's motion to compel compliance with subpoena and granted the Department of Homeland Security's motion to quash); see also Houston Business Journal v. Office of the

---

[4] Nor does the "unpublished decision" attached to petitioner's Motion to Compel, Tab 6, cause any waiver. Contrary to petitioner's assertion, the document was not published by the OCC but was apparently given to on-line reporting services by the recipient with the name of the addressee and ther name of the bank redacted. Moreover, the OCC's regulations specifically preserve its rights against any such waiver. 12 C. F. R. § 4.37(d) ("Intention of OCC not to waive rights. The possession by any of the entities or individuals described in paragraphs (a), (b), and (c) of this section of non-public OCC information does not constitute a waiver by the OCC of its right to control, or impose limitations on, the subsequent use and dissemination of the information.")

11

Comptroller, Dept. of the Treas., 86 F.3d 1208 at 1212 n. 4 (D.C. Cir. 1994)(citing Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991); Davis Enters. v. EPA, 877 F.2d 1181, 1186 (3rd Cir. 1989), cert. denied, 493 U.S. 1070 (1990); Bobreski v. EPA, 284 F. Supp. 2d. 67 (D.D.C. 2003).

**D. Petitioner's Subpoena Request Does Not Satisfy the Regulations**

Finally, even if petitioner were properly before this Court on an APA challenge, the agency action was not arbitrary, capricious, or contrary to law.  Requiring the OCC to provide privileged documents or deposition testimony on the subject of payday lending is not warranted by petitioner's administrative request to the OCC and petitioner's failure to request testimony.  Because the OCC must conserve its resources to carry out the mission assigned by Congress to regulate national banks in the national banking system, furnishing testimony in private litigation is not in the agency's interest absent a showing of compelling need.  12 C.F.R. 4.33(c).  Such testimony would be overly burdensome and likely seek testimony or information subject to the deliberative process and attorney-client privileges. See Golden Pacific Bancorp v. FDIC, supra.  The petitioner seeks discovery into the mental thought processes of OCC employees, not on any final agency action but on hypothetical situations.  Even in matters involving APA review of final agency action where the government is a party, the body of administrative law severely restricts discovery of the predecisional deliberative thought processes of government officials.

The deliberative process privilege prevents harm to the quality of agency decisions by shielding the opinions, conclusions, and reasoning used in the administrative and decision-making process of the government.  See United States v. Morgan, (Morgan IV), 313 U.S. 40, 422 (1941); Petroleum Info Corp. v. Dept. of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992);

Access Reports v. Dept. of Justice, 926 F.2d 1192, 1194-1195 (D.C. Cir. 1991); United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993).

**E. Other Sources Exist for the Information Sought By Petitioner**

The petitioner seeks testimony, hypothetical in nature, to assist him in his claims against the Wells Fargo Bank regarding the validity of Wells Fargo's "payday lending" program. The OCC has been outspoken in describing what is and is not acceptable in such a program, as evidenced by a number of policy statements and news releases found on the OCC website. In fact, the OCC has stated its position on payday lending, both in regulations (12 C.F.R.§ 7.4008) and in advisory letters to national banks. OCC Advisory Letter 2000-7 dated July 25, 2000, OCC Advisory Letter 2000-10 dated Nov. 27, 2000, and OCC Advisory Letter 2003-2 dated Feb. 21, 2003, all contain additional agency guidance on payday lending programs. Finally, the website of the OCC has multiple press releases and settlement documents relating to instances in which the OCC prohibited specific payday lending programs. Actions taken by the OCC against lenders are also identified in the website under Consumer Protection News: Payday Lending. Petitioner has never explained why this information is insufficient as required by OCC's Touhy regulations. Indeed, the OCC's decision denying petitioner's administrative request offered to provide petitioner with such publicly available documents and explained that much of it is available on the OCC's website. Motion to Compel, Tab 3, at 2.

**IV. Conclusion**

Petitioner's Motion to Compel testimony and document production should be denied and OCC's Motion to Quash should be granted because: OCC is not a person under Fed. R. Civ. P. 45; the petitioner failed to pursue her sole remedy under the APA; OCC has valid Touhy regulations that it has appropriately applied; and OCC's decision denying petitioner's request for

13

privileged documents was not arbitrary, capricious, an abuse of discretion or otherwise contrary to law within the APA.

  Respectfully submitted, this 17th day of January, 2006.

        _____/s/_____
        KENNETH L. WAINSTEIN, D.C. BAR # 451058
        United States Attorney

        _____/s/_____
        R. CRAIG LAWRENCE, D.C. BAR # 171538
        Assistant United States Attorney

        _____/s/_____
        LAURIE WEINSTEIN, D.C. Bar #389511
        Assistant United States Attorneys
        555 4th Street, NW  Room E4820
        Washington, DC 20530
        202-514-7133