IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| IN RE SUBPOENA DUCES TECUM | ) | |
| Served on the OFFICE OF THE | ) | |
| COMPTROLLER OF THE CURRENCY | ) | Civ. No. 05-0525 (ESH/DAR) |
| | ) | |
| | ) | |
| | ) | [U.S. District Court, District of Arizona |
| | ) | Case No.:05-1504- pHX-NVW captioned |
| | ) | <u>Janos v. Wells Fargo Bank</u>] |

RESPONDENT OFFICE OF THE COMPTROLLER OF THE CURRENCY'S REPLY TO
PETITIONER'S RESPONSE TO OCC'S MOTION TO QUASH SUBPOENA DUCES TECUM

  The Office of the Comptroller of the Currency ("OCC") submits this Reply to petitioner Janos's Response to OCC's Cross Motion to Quash Subpoena Duces Tecum.

  In several ways, petitioner's Response fails to show she is entitled to enforcement of the subpoena. First, petitioner argues that Wells Fargo's reliance on an OCC letter that petitioner believes the OCC released for publication is a special circumstance making Rule 45 applicable to the OCC, notwithstanding the case law to the contrary. Pet. Response 2-3. As the OCC stated in its opening brief, Mem. in Opp. 11 & n.4, the OCC did *not* publish the letter in question, and does not know who did.[1] Thus, the letter's availability is not the result of action by the OCC. In any event, someone else's action in publishing an otherwise unpublished OCC letter does not create a right in petitioner to access other confidential and privileged OCC material.

  Second, petitioner's Response fails to explain why she never submitted an administrative request to the OCC for testimony. A request is required by the OCC's regulations, 12 C.F.R.

---

[1] The OCC does, on a monthly basis, release for industry guidance a handful of significant opinion letters in a booklet called <u>Interpretations and Actions</u>, but each such interpretive letter is designated with a number (*e.g.*, OCC Interpretive Letter 923). The letter about which petitioner complains bears no such designation; indeed, the publisher (or the person who gave the letter to the publisher) added the heading "OCC *Unpublished* Interpretive Letter" (emphasis added) and the name of the Treasury Department (which does not appear on the OCC's official stationery).

§ 4.33(c), which specifies that the requester must "show a compelling need." 12 C.F.R. § 4.33(c)(1). Without a request and agency approval, an OCC employee is prohibited by 12 C.F.R. § 4.37(a) from disclosing "non-public OCC information," a term defined as including testimony. 12 C.F.R. § 4.32(b)(1)(v). Petitioner's failure to request testimony before issuing a subpoena is especially noteworthy here because the subpoena clearly seeks *expert* testimony. Specifically, the subpoena calls for the testimony of "one or more qualified individuals," and it defines "qualified individual" as "one who is familiar with OCC's regulatory position as to the application of TILA, Regulation Z, and Regulation 7.4008 to payday loan programs conducted by national banks and particularly to the Wells Fargo Direct Deposit Advance loan program." Since OCC's Touhy regulation warns that "[t]he OCC generally will not authorize a current OCC employee to provide expert or opinion evidence for a private party," 12 C.F.R.§ 4.35(b)(1), petitioner's failure to exhaust her administrative remedies is egregious and warrants this court quashing the subpoena. Golden Pacific Bancorp v. FDIC, 1999 WL 1332312 (D.N.J. 1999) (quashing subpoena for OCC's employee's testimony for failure to exhaust administrative remedies); Denny v. Carey, 78 F.R.D. 370, 372 (E.D. Pa. 1978) ("When a party seeking discovery from such departments has not complied with the regulations, a motion for discovery over such material must be denied"); Sterling Nat'l Bank of Davie v. Camp, 307 F. Supp. 778, 780 (D.D.C. 1970) (litigant's failure to comply with OCC's predecessor Touhy regulation warrants quashing subpoena).

      The OCC's insistence that a private litigant seeking testimony submit a request is predicated on the need to assure the availability of employees to accomplish the mission assigned by Congress. That mission is to supervise and examine national banks. 12 U.S.C. §§ 481 (empowering OCC examiners to "make a thorough examination of all the affairs of the bank") and 1820(d) (prescribing annual on-site examinations for most banks). The OCC's ability

to carry out this mission and adhere to the prescribed frequency of examinations would be seriously compromised if a private litigant could command the testimony of an agency employee simply by issuing a subpoena. Indeed, the OCC's request requirement is predicated on the need to "[e]nsure that OCC resources are used in the most efficient manner consistent with the OCC's statutory mission." 12 C.F.R. § 4.31(a)(4).

The federal courts have recognized the need for exhaustion, with respect to both documents and testimony. McKart v. U.S., 395 U.S. 185, 193 (1969); Raffa v. Wachovia Corp., 242 F.Supp.2d 1223 (M.D. Fla. 2002) (directing plaintiff shareholders to use OCC's administrative procedures for access to non-public OCC information); Union Planters Bank, N.A. v. Continental Casualty Co., 2003 WL 23142200 (W.D. Tenn. Nov. 26, 2003) at 2-3 (" . . . the parties must first submit a formal request to the OCC to use the information . . . as required by 12 C.F.R. § 4.33"); American Sav. Bank v. PaineWebber, 210 F.R.D. 721, 722 (D. Hawaii 2001) (stating with reference to OTS regulations that "Courts, in construing regulations which control the release of official information, have held that such information should not be compelled to be produced in violation of these regulations"). Indeed, a court *needs* the agency's decision in order to exercise judicial review. *E.g.*, Cleary Gottlieb Steen & Hamilton v. HHS, 844 F. Supp. 770, 783-787 (D.D.C. 1993) (reviewing agency decision denying requests for testimony). See also Moran v. Pfizer, 2000 U.S. Dist. LEXIS 11039 (S.D.N.Y. 2000) (upholding agency's denial of testimony under the Administrative Procedure Act).

Third, with respect to the confidential and privileged OCC documents sought in the subpoena, petitioner's Response fails to explain why the OCC's decision denying the request (Motion to Compel, Tab 3) is incorrect. As set forth in the decision, petitioner's administrative request failed to make the showings required by the OCC's Touhy regulation, 12 C.F.R. § 4.33(a)(3)(iii)(A)-(E). Specifically, petitioner's request did not explain how the information is

relevant to the purpose for which it was sought, and it did not even discuss whether other evidence reasonably suited to petitioner's needs is available from another source or whether petitioner's need for the information outweighed the public interest considerations in maintaining its confidentiality.  Since numerous OCC public documents exist on the subject of payday lending – described in OCC's Mem. in Opp. at 13 and which the OCC's decision offered to provide – petitioner's failure to address alternative sources of evidence and the nature of her need is a serious flaw in petitioner's administrative request, and the OCC was warranted in denying the request.  Petitioner's Response, while claiming in a conclusory manner that the OCC documents are relevant to the underlying case, similarly fails to discuss the availability of alternative sources of evidence or need in relation to the public interest considerations in maintaining the confidentiality of this information.  Clearly, the OCC's decision was not arbitrary, capricious, an abuse of discretion or otherwise contrary to law under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).  As one court explained, "[T]he OCC's interpretation of its own regulation pursuant to a request for disclosure is entitled to some deference."  Raffa v. Wachovia Corp., 2003 WL 21517778 (M.D. Fla. May 15, 2003).  Therefore, the OCC's decision on petitioner's request should be upheld.

The same conclusion is reached when weighing the five factors used by courts in reviewing claim of the bank examination privilege.  In In re Subpoena Served Upon the Comptroller of the Currency, 962 F. 2d 630, 634 (D.C. Cir. 1992), the seminal case on the bank examination privilege, five factors were cited: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

Here, with respect to (1), the OCC's decision concluded that petitioner had not satisfactorily explained how the OCC information is relevant to the purpose for which it was sought. With respect to (2), a considerable amount of other evidence is available, as described in OCC's Mem. in Opp. 13, including three OCC Advisory Letters to national banks on payday lending, and multiple press releases and settlement documents arising from enforcement actions against banks engaged in payday lending. Moreover, petitioner could secure expert testimony on the principal issue raised by the First Amended Complaint in this litigation: whether Wells Fargo's payday lending program should be treated as open-end credit or as closed-end credit for Truth in Lending Act disclosure purposes. Motion to Compel, Tab 1 ¶¶ 15-18; Motion to Compel 2.

With respect to (3), the underlying litigation, while undoubtedly serious to the parties involved, is a routine action alleging noncompliance with the Truth in Lending Act and Federal Reserve Regulation Z. Motion to Compel 2. The principal issue, *i.e.*, the proper characterization of the type of credit offered by Wells Fargo, is a highly technical issue not involving national policy issues, such as might arise from the failure of a major bank. Compare In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 587 (E.D.N.Y. 1979) (justifying the release of examination report excerpts on the threat of the bank's failure to the economic health of the national and international economic community). Thus, this factor weighs in favor of sustaining the privilege.

With respect to (4), the government has no role in the litigation, which is between private parties, and the government has no stake in the outcome. With respect to (5), there is indeed the possibility that the OCC's examiners will become more circumspect in their recommendations when, as here, their advice is used for a purpose they did not envision. See In re Providian Financial Securities Litig., 222 F.R.D. 22, 29 (D.D.C. 2004) (citing effect on future OCC efforts

of compounded disclosures); <u>Raffa v. Wachovia Corp.</u>, 2003 WL 21517778, at 4 (M.D. Fla. May 15, 2003) ("[d]isclosure of the OCC document could impair the free flow of information between bank and bank examiner in future cases").  Thus, the balance weighs in favor of sustaining the OCC's privilege.  <u>In re Bank One Sec. Litig.</u>, 209 F.R.D. 418, 428 (N.D. Ill. 2002).

In conclusion, petitioner's motion to compel should be denied and her subpoena quashed for the reasons given above.

Respectfully submitted, this 7th day of February, 2006.

/s/
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

/s/
LAURIE WEINSTEIN, D.C. Bar #389511
Assistant United States Attorneys
555 4th Street, NW, Room E4820
Washington, DC 20530
202-514-7133